UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TYRONE MALCOLM, ELAINE CHANEYFIELD, NELSON VELEZ, LEONARD COMER, and RICHARD HORACE, individually and on behalf of all other persons similarly situated who were employed by ALLIED BARTON SECURITY SERVICES LLC and ALLIED SECURITY, LLC, and/or any other entities affiliated with or controlled by ALLIED BARTON SECURITY SERVICES LLC and ALLIED SECURITY, LLC,<br><br>Plaintiffs,<br><br>- against -<br><br>ALLIED BARTON SECURITY SERVICES LLC and ALLIED SECURITY, LLC, and/or any other entities affiliated with or controlled by ALLIED BARTON SECURITY SERVICES LLC and ALLIED SECURITY, LLC,<br><br>Defendants. | Index No.: 2013cv1576 (FB)(CLP) |

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is entered into by and between, on the one hand, TYRONE MALCOLM, ELAINE CHANEYFIELD, NELSON VELEZ, and LEONARD COMER, (the "Named Plaintiffs"), on behalf of all present and former hourly employees defined herein who performed work for Defendants as armed and unarmed security guards at certain of Defendants' locations (hereinafter collectively, with Named Plaintiffs, "Conditional Class Members") and by, on the other hand, ALLIEDBARTON SECURITY SERVICES LLC, ALLIED SECURITY, LLC and/or their affiliated entities and/or their controlling entities (the "Defendants").[1] Defendants, collectively with the Named Plaintiffs, shall be referred to hereinafter as the "Parties."

## RECITALS AND BACKGROUND

WHEREAS, the Named Plaintiffs filed a Complaint against Defendants under Article 9 of the New York Labor Law for the alleged failure to pay certain prevailing wages and supplemental benefits to armed and unarmed security guards employed by Defendants at certain of its locations since March 25, 2007 (the "Litigation");

WHEREAS, the Parties have agreed to a Conditional Class Certification for the sole purpose of settling the Litigation;

---

[1] See Paragraph 5.18 of this Agreement below.

1

WHEREAS, solely for the purpose of settling the Litigation, and without admitting any wrongdoing or liability, Defendants have agreed to disseminate a Notice of Settlement pursuant to the Federal Rules of Civil Procedure to all Conditional Class Members defined herein; and

WHEREAS, the purpose of this Agreement is to settle fully and finally all claims between the Conditional Class Members and Defendants, including all claims asserted in the Litigation, in order to avoid the burden, expense, and uncertainty of continuing the Litigation; and

WHEREAS, Plaintiffs' Counsel conducted significant investigation of the facts and law both before and after the Litigation was filed. Moreover, after the Litigation was filed, the parties engaged in extensive formal and informal discovery and investigations; review and analysis of time worked, work performed, and wage records by counsel and experts; and interviews of potential witnesses; and

WHEREAS, Plaintiffs' Counsel has analyzed and evaluated the merits of the claims made against Defendants and the impact of this Agreement on the Conditional Class Members and, based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery whatsoever, or might result in a recovery that is less favorable and that would not occur for several years, Plaintiffs' Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interest of the Conditional Class Members; and

WHEREAS, Defendants' Counsel has performed a thorough study of the law and facts relating to the claims asserted in the Litigation. Based upon its investigation, and taking into account the sharply contested issues, the expense and time necessary to pursue the Litigation through trial, the risks and costs of further defense of the Litigation, the uncertainties of complex litigation, the advice of Defendants' Counsel, and the substantial benefits to the Conditional Class Members, Defendants have concluded that a settlement with Named Plaintiffs and the Conditional Class Members on the terms set forth herein is fair, reasonable, adequate and in the best interests of Defendants and the Conditional Class Members.

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete Settlement of the Litigation on the following terms and conditions:

## 1. DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

**1.1 Administration Costs.** "Administration Costs" shall mean the Claims Administrator fees charged by the Claims Administrator.

**1.2 Agreement.** "Agreement" means this Settlement Agreement and Release.

1.3 **Plaintiffs' Claimed Damages Amount.** The parties agree that, for settlement purposes only, the potential damages allegedly owed to the Conditional Class Members are approximately One Million Two Hundred and Thirty-Eight Thousand Dollars (the "Claimed Damages Amount"). The Claimed Damages Amount represents the alleged maximum amount that would be owed to all of the Conditional Class Members, and is the basis for allocating their individual settlement payments.

1.4 **Claim Bar Date.** The date by which any Conditional Class Member who wishes to qualify as a "Claimant" must file a Claim Form, which date shall be no later than 60 days after the initial mailing of Notice by the Claims Administrator.

1.5 **Claim Form.** "Claim Form" shall mean the form, a copy of which is attached to the Notice of Proposed Settlement, that Conditional Class Members must sign and return post-marked by the Claim Bar Date in order to be eligible to be a Claimant.

1.6 **Claimant.** A Conditional Class Member, or the authorized legal representative of a Conditional Class Member defined in Section 1.8, who is eligible to participate in this settlement and files with the Claims Administrator a Claim Form containing the information requested in the Claim Form by the Claim Bar Date, and whose Claim Form is not rejected. Claimants acknowledge that they agree to settle all Released Claims against the Released Parties.

1.7 **Claims Administrator.** "Claims Administrator" refers to the administrator selected to mail the Notices and administer the Settlement.

1.8 **Conditional Class; Conditional Class Members.** "Conditional Class" or " Conditional Class Members" shall be defined in two sub-classes:

<u>SUB CLASS 1:</u>
All individuals currently or formerly engaged by Defendants and/or any other entities affiliated with or controlled by Defendants who performed work from July 1, 2010 to September 30, 2010 as Armed Security Guards or Unarmed Security Guards under NYCTA Contract No. O6H9503 ("Gap Period Sub-Class").

<u>SUB CLASS 2:</u>
All individuals currently or formerly engaged by Defendants and/or any other entities affiliated with or controlled by Defendants who performed work from November 1, 2007 through the present as Armed Security Guards or Unarmed Security Guards under the Contract between AlliedBarton Security Services LLC and Colliers ABR dated November 1, 2007 ("2 Broadway Sub-Class").

1.9 **Class List.** A list of all Conditional Class Members, identified by: (i) name; (ii) sub-class; and (iii) settlement allocation is found on the schedule annexed hereto as Exhibit "1."

1.10 **Conditional Class Certification.** "Conditional Class Certification" shall refer to the fact that the Parties have agreed to certify the subclasses referenced herein for purposes of settlement only and have conditioned said certification upon the completion of settlement.

In the event settlement should not be finalized, not completed, nullified, or in any way set aside, the certification of the subclasses shall be rendered null and void.

1.11 **Counsel.** "Class Counsel" or "Plaintiffs' Counsel" shall mean Lloyd Ambinder and James Murphy, Virginia & Ambinder, LLP, 40 Broad Street, New York, New York, 10004. "Defendants' Counsel" shall mean Marty Martenson and David Hamilton, Martenson, Hasbrouck & Simon LLP, 3379 Peachtree Rd., NE, Suite 400, Atlanta, GA 30326 and Michael Schmidt, Cozen O'Connor, 277 Park Avenue, New York, NY 10172.

1.12 **Court.** "Court" means the United States District Court for the Eastern District of New York.

1.13 **Days.** "Days" means business days if the specified number is less than ten (10), and calendar days if the specified number is ten (10) or greater.

1.14 **Fairness Hearing.** "Fairness Hearing" means the hearing before the Court on the Motion for Judgment and Final Approval, unless otherwise scheduled by the Court without the filing of a motion.

1.15 **Final Order.** "Final Order" means the Order entered by the Court after the Fairness Hearing, approving the terms and conditions of this Agreement, distribution of the Settlement Checks by the Claims Administrator, approval of Professional Fees and Costs, and dismissal of the Litigation with prejudice.

1.16 **Final Effective Date.** "Final Effective Date" shall be the first date after the Court has entered a Final Order approving this Settlement and the Court has entered the judgment; the time to appeal from the Final Order has expired and no notice of appeal has been filed or if a notice of appeal is filed, the latest of the following, if applicable, has occurred: (1) any appeal from the Final Order has been finally dismissed; (2) the Final Order has been affirmed on appeal in a form substantially identical to the form of the Final Order entered by the Court; (3) the time to petition for review with respect to any appellate decision affirming the Final Order has expired; and (4) if a petition for review of an appellate decision is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirmance of the Final Order in a form substantially identical to the form of the Final Order entered by the Court.

1.17 **Implementing Order.** "Implementing Order" means the Order entered by the Court: (i) effectuating the Settlement; (ii) approving the Notice and Claim Forms and, (iii) directing the manner and timing of publishing the Notice to the Conditional Class Members.

1.18 **Named Plaintiffs.** "Named Plaintiffs" means TYRONE MALCOLM, ELAINE CHANEYFIELD, NELSON VELEZ, and LEONARD COMER.

1.19 **Notice or Notices.** "Notice" or "Notices" means the Court approved Notice of Proposed Settlement including notice of an opportunity to opt-out and/or object to the proposed Settlement.

1.20 **Objector.** "Objector" means an individual who properly files an objection to this Agreement, and does not include any individual who opts-out of this Agreement.

1.21 **Opt-out Statement.** "Opt-out Statement" is a written signed statement that a Conditional Class Member has decided to opt-out and not be included in this Agreement. A Conditional Class Member who does not submit an Opt-out Statement waives and releases all Released Claims against the Released Parties, even though he or she does not submit a Claim Form. A Conditional Class Member who submits an Opt-out Statement retains Released Claims, if any.

1.22 **Released Claims.** "Released Claims" shall mean all claims released and waived pursuant to this Agreement. For Claimants, Released Claims shall include claims arising under local, state, or federal law asserting breach of contract or claims regarding prevailing wages and/or benefits that were or could have been asserted in the Litigation as a member of the Gap Period Sub-Class and/or 2 Broadway Sub-Class by or on behalf of any Conditional Class Member. For Claimants, Released Claims also include, without limitation, all claims under federal, state, or local law for unpaid regular or overtime wages, any related wage and hour claims, breach of contract, all 'derivative benefit claims' (defined as claims for benefits resulting from alleged failure to pay overtime or wages), liquidated and/or statutory damages, interest on such claims, and attorneys' fees, expenses and costs related to such claims. For Conditional Class Members who do not submit a Claim Form, Released Claims shall mean claims arising under local, state or federal law regarding breach of contract or prevailing wages and/or benefits that were or could have been asserted in the Litigation by or on behalf of any Conditional Class Member. For Conditional Class Members who do not submit a Claim Form, Released Claims shall include, without limitation, all claims under state or local law for unpaid regular or overtime wages, any related wage and hour claims, breach of contract, all 'derivative benefit claims' (defined as claims for benefits resulting from alleged failure to pay overtime or wages), liquidated and/or statutory damages, interest on such claims, and attorneys' fees, expenses and costs related to such claims. Nothing herein shall be deemed to release any benefit fund claims, including pension, annuity and welfare fund contribution arising from a Class member's membership in a union that was signed to a collective bargaining agreement with Defendants during the Relevant Period.

1.22 **Released Parties.** "Released Parties" shall mean, collectively, Defendants, their direct and indirect past, present and future parents, subsidiaries, divisions and affiliates and their respective past, present and future officers, directors, employees, partners, shareholders, owners, agents, vendors, affiliates, insurers, legal representatives and all of their successors, assigns, representatives, spouses, registered domestic partners, beneficiaries, heirs, executors and administrators.

1.23 **Relevant Period.** For purposes of Sub-Class 1 (i.e. Gap Period Sub-Class), the "Relevant Period" means July 1, 2010 through September 30, 2010. For purposes of Sub-Class 2 (i.e. 2 Broadway Sub-Class) the "Relevant Period" means November 1, 2007 through the present.

1.24 **Settlement Fund.** Means the *potential* maximum amount to be paid by Defendants, if all Class Members participate in the Settlement according to the terms set forth herein, to

5

include (1) Plaintiffs' Counsels' Professional Fees and Costs as set forth in Paragraph 3.3(C), (2) the Service Awards to Named Plaintiffs as set forth in Paragraph 3.3(D), and (3) payments to Claimants, including all applicable employer payroll tax contributions associated with wage payments, including but not limited to Defendants' share of FICA, FUTA, and SUTA, as set forth in Paragraphs 3.3(A) and 3.4. Under no circumstances shall the Settlement Fund exceed $850,000 (eight hundred and fifty thousand dollars).

**1.25** **Settlement Checks.** "Settlement Checks" means checks issued to Claimants from the Settlement Fund by the Claims Administrator in accordance with this Agreement.

**1.26** **Litigation.** The "Litigation" shall refer to the matter of *Malcolm Tyrone et al. v. AlliedBarton Security Services LLC et al.*, United States District Court for the Eastern District of New York, Index No. 2013cv1576 (FB) (CLP).

## 2. INITIAL PROCEDURAL ISSUES

**2.1** **Interim Stay of Proceedings.** Pending the Fairness Hearing to be conducted by the Court, or earlier if for any reason the Settlement contemplated by this Agreement will not occur, the Parties agree to hold in abeyance all proceedings in the Litigation, except such proceedings as are necessary to implement and complete the Settlement, or to comply with any order of the Court.

**2.2** **Stipulation for Conditional Certification of the Class.** Solely for purposes of consummation and fulfillment of this Agreement, the Parties each agree to the conditional certification of the Class. Should, for whatever reason, the Settlement not become final, the Parties' stipulation to conditional class certification shall become null and void *ab initio* and shall have no bearing on, and shall not be admissible in connection with, the issue of whether or not certification would be appropriate in a non-settlement context.

**2.3** **Retention of the Claims Administrator.** To the extent necessary, Defendants shall engage a Claims Administrator, who is mutually agreeable to the Plaintiffs.

**2.4** **Responsibilities of the Administrator.** Unless otherwise directed by the Parties, the Claims Administrator shall be responsible for: (i) preparing, printing and disseminating the Notice and Claim Forms to Conditional Class Members; (ii) copying counsel for all Parties on material correspondence and promptly notifying all counsel for the Parties of any material requests or communications made by any Party; (iii) promptly furnishing to all counsel for the Parties copies of any Opt-out Statements, objections, or other written or electronic communications from any Conditional Class Member, which the Administrator receives; (iv) receiving and reviewing the Claim Forms submitted by Conditional Class Members; (v) keeping track of Opt-out Statements, including maintaining the original mailing envelope in which the Statement was mailed; (vi) mailing of the Notice and Claim Forms and attempting to ascertain current address and addressee information for each Notice and Claim Form returned as undeliverable; (vii) referring to Plaintiffs' Counsel all inquiries by Conditional Class Members regarding matters not within the Claims Administrator's duties specified herein; (viii) responding to inquiries from counsel for the Parties consistent with the Claims Administrator's duties specified herein; (ix) promptly apprising counsel for the Parties of the activities of the Claims Administrator; (x)

maintaining adequate records of its activities, including the dates of the mailing of Notice(s) and mailing and receipt of Claim Forms(s), returned mail and other communications and attempted written or electronic communications to and/or from Conditional Class Members; (xi) distributing Settlement Checks and a check to Plaintiffs' Counsel for Professional Fees and Costs in accordance with Section 3 herein, (xii) within 180 days of the Final Effective Date, notifying the Parties of any returned or uncashed Settlement Checks issued to Claimants; and (xiii) calculate and remit all applicable employer payroll tax contributions associated with the Settlement Checks, including but not limited to Defendants' share of FICA, FUTA, and SUTA; (xiv) invoice Defendants for those Administration Costs due to it as a result of its performance of duties as set forth in this Agreement; and (xv) such other tasks as the Parties mutually agree. In addition, no later than fifteen (15) days prior to the Fairness Hearing, the Administrator shall certify jointly to the Parties' counsel: (a) a list of all Conditional Class Members who timely filed valid Claim Forms, (b) a list of all Conditional Class Members who filed a timely objection, and (c) a list of all Conditional Class Members who timely and validly requested to opt-out of the Settlement. The Claims Administrator shall also provide the Parties with an updated address list for Conditional Class Members. Throughout the period of claims administration, the Claims Administrator will provide reports to the Parties upon request by either Party, regarding the status of the mailing of the Notices and Claims Forms to Conditional Class Members, the claims administration process, or any other aspect of the claims administration process.

2.5  **Responsibilities of Defendants.**  Defendants shall be responsible for tendering the Settlement Fund to the Claims Administrator within fifteen (15) days of the Final Effective Date.

2.6  **Notice.**  The Notice will inform Conditional Class Members about this Settlement and will also advise them of the opportunity to object to, opt-out, or file a Claim Form to join in the Settlement, and/or to appear at the Fairness Hearing. Within 45 days of the entry of the Implementing Order by the Court, the Claims Administrator will mail to all Conditional Class Members, via First Class United States Mail, the Court-approved Notice and Claim Form. The Claims Administrator will take all reasonable steps to obtain the correct address of any Conditional Class Member for whom a Notice and Claim Form is returned by the post office as undeliverable, including one skip trace, and shall attempt a re-mailing to any Conditional Class Member for whom it obtains a more recent address. The Claims Administrator will notify Defendants' Counsel of any Notice and Claim Form sent to a Conditional Class Member that is returned as undeliverable after the first mailing, as well as any such Notice and Claim Form returned as undeliverable after any subsequent mailing(s), as set forth in this Agreement.

2.7  **Access to the Claims Administrator.**  The Parties will have equal access to the Claims Administrator throughout the claims administration period. Plaintiffs' Counsel and Defendants' Counsel agree to provide the Claims Administrator with all available accurate information necessary to reasonably assist the Claims Administrator in locating Conditional Class Members.

2.8  **Approval of the Implementing Order.**

(A)   Within fifteen (15) days of signing this Agreement, Plaintiffs' Counsel shall apply to the Court to publish the proposed Notice and Claim Form. The proposed Notice, Claim Form and Implementing Order approved by the Parties are annexed hereto and made a part of this Agreement as Exhibits "2," "3," and "4," respectively.

(B)   The proposed Implementing Order will, among other things, (1) approve the Settlement as fair, adequate and reasonable; (2) approve the proposed Notice to Conditional Class Members; (3) request the setting of a date for Conditional Class Members to submit Claim Forms, opt-out of this Agreement and/or provide objections to this Agreement, which date shall be 60 days from the initial mailing of Notice and Claim Forms to Conditional Class Members; and (4) request a date for a Fairness Hearing for Final Approval of the Settlement before the Court at the earliest practicable date.

(C)   Upon completion of all deadlines and procedures as set forth herein, Plaintiffs' Counsel will move the Court to obtain a "Final Order" and a "Judgment of Dismissal" that will, among other things: (1) incorporate the terms of the Release, as described herein; (2) dismiss the Litigation with prejudice; and (3) award Plaintiffs' Counsels' Professional Fees and Costs as provided for in Section 3.3(C).

(D)   The Parties will work together, diligently, and in good faith, to expeditiously obtain an Implementing Order, Final Order, and Final Judgment and Dismissal with Prejudice. Any disputes which arise between the Parties related to the Parties' efforts to obtain a Final Order, Final Judgment and Dismissal with Prejudice shall be submitted to this Court whose decision shall be binding and not subject to appeal.

**2.9   Notice and Claims Forms to Conditional Class Members.**

(A)   Within fifteen (15) days of the entry of the Implementing Order, Defendants' Counsel will provide Plaintiffs' Counsel and the Claims Administrator, in electronic form, a mailing list containing the following information for all Conditional Class Members: name, last four digits of their Social Security Number, and last known address, as that information exists on file with Defendants. All information provided regarding the Conditional Class Members will be treated as confidential information by the Plaintiffs' Counsel and Claims Administrator. This confidential information will not be used by Plaintiffs' Counsel or the Claims Administrator for any purpose other than to effectuate the terms of this Agreement.

(B)   Conditional Class Members will have 60 days from the date of initial mailing to return the Claim Form. To be effective, a Claim Form must be post-marked by the Court-authorized Claim Bar Date. To the extent that the envelope does not contain a post-mark, the date that the Claims Administrator stamps the envelope or claim form 'received,' shall apply.

**2.10   Opt-outs.**

(A)   Conditional Class Members who choose to opt-out of the Settlement as set forth in this Agreement must mail via First Class United States Mail, postage prepaid, a

8

       written, signed statement to the Claims Administrator that states he or she is opting out of the Settlement, and include his or her name, address, and telephone number and statement indicating his or her intention to opt-out such as: "I opt out of the AlliedBarton settlement." ("Opt-out Statement"). To be effective, an Opt-out Statement must be post-marked by the Claim Bar Date.

(B)     The end of the time period to opt-out of the Settlement ("Opt-out Period") shall be on or before the Claim Bar Date.

(C)     The Claims Administrator will send copies of all Opt-out Statements to Plaintiffs' Counsel and Defendants' Counsel before the Fairness Hearing. The Claims Administrator will retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as the Claims Administrator is relieved of its duties and responsibilities under this Agreement.

(D)     Any Conditional Class Member who does not submit an Opt-out Statement pursuant to this Agreement will be deemed to have accepted the Settlement and the terms of this Agreement, will be bound by the Final Order and Judgment of the Court in this case, and have any Released Claims released and dismissed. Only those Conditional Class Members who timely complete and return a Claim Form post-marked by the Claim Bar Date will be deemed authorized to participate in this Settlement as a "Claimant." The Claims Administrator will pay the amount allocated to each eligible Claimant who returns a timely Claim Form as set forth in this Agreement. Neither Defendants nor the Claims Administrator shall pay or fund any amounts allocated to Conditional Class Members who do not submit a timely Claim Form as set forth in this Agreement.

(E)     For purposes of this Agreement, the Named Plaintiffs are deemed to be Claimants, and are not required to file a Claim Form to participate in the Settlement.

**2.11 Objections to Settlement.**

(A)     Conditional Class Members who wish to present objections to the proposed Settlement at the Fairness Hearing must first do so in writing. To be considered, such statement must be mailed to the Claims Administrator via First-Class United States Mail post-marked by the Claim Bar Date. The statement must include all reasons for the objection, and any supporting documentation. The statement must also include the name, address, and telephone numbers for the Conditional Class Member making the objection. The Claims Administrator will stamp the date received on the original and send copies of each objection, and any supporting documents, to Plaintiffs' Counsel and Defendants' Counsel by email delivery no later than three (3) days after receipt of the objection.

(B)     A Conditional Class Member who files objections to the Settlement ("Objector") also has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector. An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written

9

objections at the time he or she submits his or her written objections. An Objector may withdraw his or her objections at any time.

2.12 **No Solicitation of Objections or Exclusions.** The Parties agree to use their best efforts to carry out the terms of this Settlement. Neither the Parties nor their counsel or agents will contact Conditional Class Members for the purpose of attempting to influence them to participate or not to participate in this Settlement. However, if contacted by a Conditional Class Member, Plaintiffs' Counsel may provide accurate information or assistance regarding any aspect of the Settlement requested by the Conditional Class Member. At no time shall any of the Parties or their counsel or their agents solicit or otherwise encourage Conditional Class Members or any other persons to submit written objections to the Settlement or requests for exclusion from the Settlement, or encourage Conditional Class Members or any other person to appeal any part of the Final Order.

2.13 **Fairness Hearing and Motion for Final Approval and Dismissal.** At the Fairness Hearing, the Parties will request that the Court, among other things: (1) approve the Settlement and Agreement as fair, reasonable, adequate, and binding on all Conditional Class Members who have not filed a valid, timely Opt-out Statement; (2) order the Claims Administrator to distribute the Settlement Checks to the Claimants who filed valid, timely Claim Forms, (3) order the Professional Fees and Costs to be paid to Plaintiffs' Counsel; (4) order the dismissal with prejudice of all Released Claims that could be alleged by all Conditional Class Members who did not opt-out; (5) order entry of Final Judgment in accordance with this Agreement; and (6) retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby.

2.14 **Mailing of Settlement Checks.** The Settlement Checks, and Plaintiffs' Counsel's check to pay for all approved Professional Fees and Costs, will be mailed by the Claims Administrator in accordance with the terms of the Settlement described in Article 3 hereof. The Claims Administrator shall distribute the Settlement Checks and Plaintiffs' Counsel's check within fifteen (15) days of receipt of the Settlement Fund from Defendants.

2.15 **Uncashed Checks.** If any of the Settlement Checks are returned or remain uncashed within one hundred-eighty (180) calendar days after the distribution to the participating Conditional Class Members, the Claims Administrator will notify Defendants of any unused, returned or uncashed Settlement Checks, whereafter the Claims Administrator shall discontinue payment of same, and the amounts will be returned to Defendants.

2.16 **Disputes.** If a Conditional Class Member disputes the time period listed on the Class Notice, the Conditional Class Member may produce evidence to the Claims Administrator indicating the dates contended to have been worked during the applicable Class Period. Defendants' records will be presumed determinative, but the Claims Administrator will evaluate the evidence submitted by the Conditional Class Member and Defendants, and make a recommendation to the Parties as to which dates should be applied. The Parties will then make a joint determination, subject to the right of Defendants or the Conditional Class Member to appeal the decision to the Court.

3. **SETTLEMENT TERMS**

3.1 **Difficulty of Determining Claims.** The Parties recognize and agree that the precise amounts of compensation claimed in this litigation are extremely difficult to determine with any certainty for any given year, if at all, and are subject to a myriad of different calculations and formulas. The Parties agree that the formula for allocating the Settlement Checks to the Named Plaintiffs and Claimants provided herein is reasonable and that the payments provided herein are designed to provide a fair settlement to such persons, in light of the uncertainties regarding the compensation alleged to be owed to the Conditional Class and the calculation of such amounts.

3.2 **Consideration from Defendants.** In full settlement of the claims asserted in the Litigation and all Released Claims, Defendants shall pay a maximum gross settlement amount of $850,000 (eight hundred and fifty thousand) (i.e., the "Settlement Fund"). This maximum gross amount (i.e., Settlement Fund) in this Litigation has three components: (1) Professional Fees and Costs to Plaintiffs' Counsel (2) the Service Awards to Named Plaintiffs, and (3) payments to Claimants, including all applicable employer payroll tax contributions associated with wage payments, including but not limited to Defendants' share of FICA, FUTA, and SUTA.

3.3 **Settlement Fund Computation and Allocations.**

   (A) **Amounts to Claimants.**

   The amounts paid to the Claimants in Sub-Class 1 and Sub-Class 2 shall be based on their proportionate allocated share of Plaintiffs' Claimed Damages Amount of $1,238,000.00.

   **Sub-Class 1 (Gap Period Sub-Class):** Subject to Section 3.3(E), payments to individual Claimants who are part of Sub-Class 1 shall be made as set forth on Exhibit 1, inclusive of employer payroll tax contributions associated with wage payments, including but not limited to Defendants' share of FICA, FUTA and SUTA.

   **Sub-Class 2 (2 Broadway Sub-Class):** Subject to Section 3.3(E), payments to individual Claimants who are part of Sub-Class 2 shall be made as set forth on Exhibit 1, inclusive of employer payroll tax contributions associated with wage payments, including but not limited to Defendants' share of FICA, FUTA and SUTA.

   (B) **Administration Costs.** Defendants shall separately pay any Administration Costs incurred by the Claims Administrator as a result of its performance of duties as set forth in this Agreement.

   (C) **Professional Fees and Costs.** At the Fairness Hearing, Class Counsel will petition the Court for an award of attorneys' fees, plus reimbursement of their actual litigation expenses and costs, in the amount of $305,000 (three hundred and five thousand dollars) or 24.6% of Plaintiffs' Claimed Damages Amount. Defendants

11

will not oppose this application, including any appeal or request for reconsideration filed by Class Counsel if the application is denied or modified by the Court. Defendants acknowledge that this request for attorney fees and costs is fair and reasonable, and will not oppose Class Counsel's application for approval. To the extent the petitioned-for amount is reduced by the Court, there shall be a proportionate and like reduction to the Settlement Fund.

(D) **Service Awards.** In return for services rendered to the Conditional Class Members, Named Plaintiffs will apply to the Court at the Fairness Hearing, to receive no more than Twenty Thousand Dollars and No Cents ($20,000.00) to be distributed equally between Named Plaintiffs TYRONE MALCOLM, ELAINE CHANEYFIELD, LEONARD COMER and NELSON VELEZ.

(E) **Proration.** Under no circumstances shall Defendants be required to pay more than $850,000 (eight hundred and fifty thousand dollars) total. This amount includes: (1) Plaintiffs' Counsels' Professional Fees and Costs as set forth in Paragraph 3.3(C), (2) the Service Awards to Named Plaintiffs as set forth in Paragraph 3.3(D), and (3) payments to Claimants, including all applicable employer payroll tax contributions associated with wage payments, including but not limited to Defendants' share of FICA, FUTA, and SUTA, as set forth in Paragraphs 3.3(A) and 3.4. If the aggregate of: (1) all Claimants' claims; (2) Plaintiffs' Counsels' Professional Fees and Costs; and (3) Service Awards to the Named Plaintiffs exceeds $850,000 (eight hundred and fifty thousand dollars), then the individual allocations to Claimants set forth on Exhibit 1 shall be prorated down so that Defendants do not pay a sum of more than $850,000 (eight hundred and fifty thousand dollars) total for (1) all Claimants' claims; (2) Plaintiffs' Counsels' Professional Fees and Costs; and (3) Service Awards to the Named Plaintiffs

3.4 **Tax Characterization.**

(A) Settlement Checks issued to Claimants will be deemed W-2 wage income. Service Awards to the Named Plaintiffs shall be deemed Form 1099 income.

(B) All applicable employer payroll tax contributions associated with wage payments, including, but not limited to, Defendants' share of FICA, FUTA, and SUTA will be paid out of the Settlement Fund by the Claims Administrator.

(C) The Service Awards to the Named Plaintiffs and the fees and expenses provided to Class Counsel shall be reported on an IRS 1099 Form issued by the Claims Administrator to the appropriate taxing authorities, with a copy to Class Counsel.

3.5 **No Tax Advice.** Neither Plaintiffs' Counsel nor Defendants' Counsel intend anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, nor shall it be relied upon as such. The tax issues for each Claimant are unique, and each Claimant is advised to obtain tax advice from his or her own tax advisor with respect to any payments resulting from the Settlement Checks.

3.6 **Hold Harmless.** The Claimants agree to hold Defendants harmless, and indemnify Defendants from any payments the Defendants may be required to make to any taxing authority resulting from the issuance of an IRS tax form 1099 or form W-2 and any Claimant's failure to pay any taxes that any Claimant owes related to said income.

3.7 **Nullification of Agreement.** The Parties expressly agree that, in the event the Conditional Class Members opting out of the Settlement equal or exceed twenty percent (20%) of the total number of Conditional Class Members, or if the potential individual Settlement Checks of the Conditional Class Members opting out equal or exceed twenty percent (20%) of that portion of the Settlement Fund devoted to payments to claimants, then Defendants in their sole discretion may choose to nullify the Settlement and this Agreement. If the Settlement and this Agreement are nullified for any reason, the Claims Administrator will return all Settlement Fund amounts to Defendants.

3.8 **Defendants' Legal Fees and Costs.** All of Defendants' own legal fees, costs and expenses incurred in the Litigation shall be borne by Defendants.

3.9 **No Effect on Employee Benefits.** The Settlement Checks issued to Claimants and the Service Awards paid to Named Plaintiffs shall not be deemed to be "pensionable" earnings and shall not have any effect on the eligibility for, or calculation of, any of the employee benefits (e.g. vacations, holiday pay, retirement plans, etc.) of the Named Plaintiff or Claimants. The Parties agree that any Settlement Checks or Service Awards paid under the terms of this Agreement do not represent any modification of Claimants' previously credited hours of service or other eligibility criteria under any employee retirement benefit plan or employee welfare benefit plan sponsored by Defendants. Further, any Settlement Checks or Service Award paid hereunder shall not be considered "compensation" in any year for purposes of determining eligibility for, or benefit accrual within, an employee retirement benefit plan, employee welfare benefit plan, employee bonuses, or employee past, current, or future compensation levels.

4. **RELEASE**

4.1 **Release of Claims.**

    (A) By operation of the entry of the Judgment and Final Order, and except as to such rights or claims as may be created by this Agreement, each Conditional Class Member who fails to submit a timely, valid Opt-out Statement forever and fully releases Released Parties from all Released Claims through the date of Judgment and Final Order.

    (B) Except as provided in this Agreement, upon payment of the Professional Fees and Costs approved by the Court, Class Counsel, the Named Plaintiffs and the Conditional Class Members hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she or they may have against Defendants for attorneys' fees or costs associated with Plaintiffs' Counsel's representation of the Conditional Class. Plaintiffs' Counsel further understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of

        all attorneys' fees, expenses and costs associated with Plaintiffs' Counsel's representation in the Litigation.

(C)     Conditional Class Members who file timely, valid Opt-out Statements shall continue to retain all rights and claims against the Defendants.

(D)     No person shall have any claim against the Parties or the Claims Administrator based on mailings, distributions and payments made, or any other action taken, in accordance with or pursuant to this Agreement or any order of the Court. For example, no person shall have any claim against either Party or the Claims Administrator resulting from use of an incorrect mailing address for a Conditional Class Member, or the payment of an incorrect amount to a Claimant. The Parties shall take reasonable steps to remedy any correctable errors.

## 5. INTERPRETATION AND ENFORCEMENT

**5.1**     **Denial of Wrongdoing.** Defendants deny all of the claims, contentions, and each and every allegation made by the Plaintiffs. In addition, nothing herein shall be deemed to waive any of Defendants' objections and defenses to class certification or any other issue relating to or arising from the allegations set forth in the Complaint.

**5.2**     **Inadmissibility of This Agreement.** Whether or not the Settlement is finally approved, and except and to the extent that this Agreement becomes a release of claims on the Final Effective Date, as provided for herein, neither the Settlement, nor any of its terms, nor any document, statement, proceeding or conduct related to this Agreement, nor any reports or accounts thereof, shall in any event be:

(A)     Construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to the Parties, including, but not limited to, evidence of a presumption, concession, indication or admission by any of the Parties of any liability, fault, wrongdoing, omission, concession or damage; or

(B)     Disclosed, referred to, or offered or received in evidence against any of the Parties, in any further proceeding in the Litigation, or any other civil, criminal or administrative action or proceeding except for purposes of settling the Litigation pursuant to the terms of this Agreement, and to enforce this Agreement in the event of a default.

**5.3**     **No Assignment.** Plaintiffs' Counsel and the Named Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

**5.4**     **Cooperation between the Parties; Further Acts.** The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each Party, upon the request of any other Party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

5.5 **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

5.6 **Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to Named Plaintiffs and Conditional Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

5.7 **Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

5.8 **Captions.** The captions or headings of the Sections and Paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

5.9 **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each Party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any Party by virtue of draftsmanship.

5.10 **Blue Penciling.** If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the entire Agreement may be rendered null, void and of no effect at the election of either Party. The Parties do not agree to any "blue penciling" of this Agreement by the Court.

5.11 **Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

5.12 **Continuing Jurisdiction.** The Parties shall request the Court to retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby.

5.13 **Waivers, etc. to Be in Writing.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any Party to insist upon the strict performance by the other Party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the

right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

5.14 **When Agreement Becomes Effective; Counterparts.** This Agreement shall become effective upon its full execution and final approval by the Court. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

5.15 **Binding Authority of Plaintiffs' Counsel.** Plaintiffs' Counsel hereby represents that they are fully authorized to bind the Named Plaintiffs to the terms and conditions hereof and that they have retainer agreements and/or authorizations to execute this Agreement on their behalf.

5.16 **Signatures.** This Agreement is valid and binding if signed by the Parties' authorized representatives.

5.17 **Facsimile and Email Signatures.** Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

5.18 **Amended Caption.** The caption shall be amended so as to remove Richard Horace as a Named Plaintiff. To the extent applicable, Richard Horace shall remain a Conditional Class Member. The caption shall be further amended to properly spell the name of Defendant AlliedBarton Security Services LLC.

Jointly submitted this 22nd day of July, 2015.

Virginia & Ambinder, LLP

_____
Lloyd R. Ambinder, Esq.
James Murphy, Esq.
40 Broad Street   7th Floor
New York, New York 10004
(212) 943-9080

*Attorney for Plaintiffs*

Martenson, Hasbrouck & Simon LLP

_____
Marty N. Martenson, Esq.
David C. Hamilton, Esq.
3379 Peachtree Road, N.E., Suite 400
Atlanta, Georgia 30326
(404) 909-8100

-and-

Michael C. Schmidt
**Cozen O'Connor**
277 Park Avenue
New York, New York 10006

(212) 883-4900

*Attorneys for Defendants*