UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

TYRONE MALCOLM, ELAINE
CHANEYFIELD, NELSON VELEZ, LEONARD
COMER, and RICHARD HORACE, individually
and on behalf of all other persons similarly
situated who were employed by ALLIED
BARTON SECURITY SERVICES LLC and
ALLIED SECURITY, LLC, and/or any other
entities affiliated with or controlled by ALLIED
BARTON SECURITY SERVICES LLC and
ALLIED SECURITY, LLC.

                    Plaintiffs,

         -against-

ALLIED BARTON SECURITY SERVICES LLC
and ALLIED SECURITY, LLC, and/or any other
entities affiliated with or controlled by ALLIED
BARTON SECURITY SERVICES LLC and
ALLIED SECURITY, LLC,

                   Defendants.

------------------------------------------------------------- x

**MEMORANDUM
AND ORDER**
13 CV 1576 (CLP)

**POLLAK**, United States Magistrate Judge:

On March 25, 2013, plaintiff Tyrone Malcolm commenced a class action alleging

violations of the New York Labor Law ("NYLL") against defendants Allied Barton Security

Services LLC, Allied Security, LLC, and all other entities affiliated with or controlled by either

(collectively, "defendants" or "Allied"). (Compl.[1] ¶¶ 1-2). On April 30, 2013, plaintiff

---

[1] Citations to "Compl." refer to plaintiff's Complaint, filed on March 25, 2013.

Malcolm, as well as Elaine Chaneyfield, Nelson Velez, Richard Horace, and Leonard Comer (collectively, "named plaintiffs") filed an Amended Complaint, seeking damages on behalf of all persons presently or formerly employed by defendants (collectively, "the class," or "plaintiffs"), pursuant to 28 U.S.C. § 1332(d) and NYLL § 230, related to the underpayment of wages and benefits owed to plaintiffs from approximately 2007 to the present. (Am. Compl.[2] ¶¶ 1-2). More specifically, plaintiffs allege that defendants failed to pay their armed security guards and unarmed security guards the prevailing rate of wages and supplemental benefits ("PW&B") as required by the NYLL for building service employees who perform public work. (Id. ¶ 5).

On May 15, 2015, the parties consented to transfer jurisdiction over this action to the undersigned. Currently pending before this Court is a joint motion that requests the following: 1) final approval of the Settlement Agreement that applies to both Rule 23 Sub Classes;[3] 2) an Order binding all Rule 23 class members who have not opted out to the release of their claims as set forth in the Settlement Agreement; 3) approval of service awards; 4) approval of Class Counsel's attorney's fees and costs relating to the litigation of this action; 5) an Order

---

[2]Citations to Am. Compl. refer to the Amended Complaint filed by plaintiffs on April 30, 2013.

[3]The Rule 23 Sub-Class 1 includes all persons who are currently or were employed by defendants and performed work as armed or unarmed security guards at any time between July 1, 2010, and September 30, 2010, under Contract No. 06H9503 (the "Gap Period Sub-Class"). (See Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of the Proposed Settlement filed on December 14, 2015 ("Pls.' Mem.") at 1). The Rule 23 Sub-Class 2 includes all persons who are currently or were formerly employed by defendants and performed work as armed or unarmed security guards under the contract between Allied and Colliers ABR (the "2 Broadway Sub-Class"). (Id.)

dismissing the action with prejudice.  (Atty. Fee Notice[4] at 1; Settlement Decl.[5] ¶ 3).


## FACTUAL BACKGROUND

The Amended Complaint alleges that defendants are limited liability companies that are engaged in the security business.  (Am. Compl. ¶¶ 23-24).  Plaintiffs allege that defendants provide armed and unarmed security guards to work at various public facilities, including government office buildings ("Public Facilities").  (Id. ¶¶ 2, 26).  According to the Amended Complaint, defendants entered into various contracts with the City of New York ("NYC"), the NYC Department of Citywide Administrative Services ("DCAS"), the Metropolitan Transit Authority ("MTA"), the NYC Transit Authority ("TA"), NYC Board of Elections ("BOE"), NYC Office of Emergency Management ("OEM"), NYC Department of Education ("DOE"), NYC Police Department ("NYPD"), and the NYC Department of Social Services ("DOSS") (collectively, the "Government entities").  (Id. ¶ 2).

Plaintiffs assert that from 2007 to the present, defendants failed to pay them the prevailing wage rates and supplemental benefits for work performed as armed and unarmed security guards at these various Government entities.  (Id. ¶¶ 2, 4, 29).  In accordance with NYLL § 230, employers are required to pay building service employees who perform public works the prevailing rate of wages and supplemental benefits as set forth by the New York State Department of Labor ("NYDOL") or the Comptroller of the City of New York ("Comptroller").

---

[4]Citations to "Atty. Fee Notice" refer to plaintiffs' Notice of Motion for Approval of Attorneys' Fees, Costs, and For Approval of Service Awards, dated December 14, 2015.

[5]Citations to "Settlement Decl." refer to the Declaration of Lloyd Ambinder in Support of Plaintiffs' Motion for Final Approval of the Proposed Settlement, dated December 14, 2015.

N.Y. Lab. L. § 230. The applicable PW&B rates are set forth in Section 230 Prevailing Wages Schedules promulgated annually by both the NYDOL and the Comptroller. (Id. ¶¶ 4, 5).

In response to employee inquiries, the Comptroller undertook an investigation of Allied and determined that Allied had failed to pay certain employees at the required PW&B rates. (Pls.' Mem. at 1). According to plaintiffs, the Comptroller's investigation ended approximately two years ago, and most class members have received their administrative settlement allocation. (Id.) The Gap Period Sub-Class consists of class members who worked during a period of time not covered by the administrative investigation. (Id.) The 2 Broadway Sub-Class is comprised of those class members who worked at the MTA's 2 Broadway location pursuant to Allied's contract with Collier's ABR. (Id. at 1-2). These employees were not covered by the Comptroller's investigation. (Id. at 2).

Plaintiffs allege that they were not paid properly according to the wage rates due under the provisions in the contracts defendants had with the various Government entities. (Am. Compl. ¶¶ 4-5). Consequently, the named plaintiffs[6] initiated this action to recover lost wages and benefits for themselves and on behalf of all others similarly situated, as well as interest, attorneys' fees, and costs. (Id. ¶ 6).

---

[6]Initially, plaintiff Malcolm filed this action on March 25, 2013. Then, on April 30, 2013, the Amended Complaint was filed, naming Malcolm, Chaneyfield, Velez, Horace, and Comer as plaintiffs. As to named plaintiff Horace, although he is listed on the Amended Complaint and in the caption, plaintiffs do not seek a service award as to plaintiff Horace and it is unclear to the Court whether he is continuing to participate in the action.

## PROCEDURAL HISTORY

Since the filing of the Complaint, Virginia & Ambinder, LLP ("Class Counsel")

conducted extensive legal research into the merits of the claims, class certification, the proper

measure of damages, and potential defenses. (Atty. Fee Decl.[7] ¶ 5). In addition, the parties have

engaged in extensive discovery, including the exchange of tens of thousands of pages of

documents, and the drafting of demands and responses on behalf of the named plaintiffs. (Id. ¶

5). Class Counsel has also engaged in significant motion practice, including drafting the class

certification motion, and litigating an appeal in the New York Appellate Division, First

Department, on the issue of the enforceability of releases signed in connection with the

Comptroller's investigation. (Id.) They also prepared for and attended the depositions of the

named plaintiffs and engaged in communications with the named plaintiffs, and "dozens of

putative class members." (Id.) In addition, Class Counsel conducted the depositions of Allied

representatives and reviewed additional discovery produced during settlement negotiations. (Id.)

Class Counsel prepared detailed audits to determine damages and engaged in extensive

settlement negotiations with defendants over a six month period both by phone and in person.

(Pls.' Mem. at 3). They also met with auditors and accountants for each side. (Id.) Class

Counsel drafted the settlement documents, motion for preliminary approval, and the instant

motion for final approval. (Atty. Fee Decl. ¶ 5)

Plaintiffs filed an initial Motion for Class Certification on March 20, 2015. Thereafter,

---

[7]Citations to "Atty. Fee Decl." refer to the Declaration of Lloyd Ambinder in Support of
Plaintiffs' Motion for Approval of Attorneys' Fees and Costs and For Approval of Service
Awards, dated December 14, 2015.

on July 31, 2015, plaintiffs submitted a Motion for Settlement of the proposed class action, which was not opposed by defendants.  On September 3, 2015, this Court preliminarily approved the Settlement, approved the Notice of Proposed Class Action Settlement and Claim Form and Release, which was distributed by first class mail on October 5, 2015 to 210 class members.  (Pls.' Mem. at 4).  Of those, 21 were returned as undeliverable.  (Settlement Decl. ¶ 6).  The Settlement Claims Administrator obtained updated addresses and re-mailed the notices to 20 class members; only one was returned again.  (Id.)  A total of 132 claims were filed with the Settlement Claims Administrator.  (Pls.' Mem. at 4).

Pursuant to the Settlement Agreement, defendants agree to create a Settlement Fund of up to $850,000 (the "Settlement Fund") to resolve the claims of both Sub-classes, counsel's fees and costs, and service awards to the named plaintiffs.  Of the $850,000, up to $305,000 will be paid to compensate plaintiffs' attorneys' fees.  (Proposed Notice[8] at 4).  Defendants shall be responsible for tendering the Settlement Fund to the settlement administrator, Dahl Administration, within 15 days of the Final Effective Date, which is 31 days after the Court approves the proposed settlement.  (See Pls.' 4/12 Ltr.[9] at 1; Set. Agr. at 1.16, 2.5).  Finally, pursuant to the terms of the Settlement Agreement, the settlement administrator, Dahl Administration will be paid directly by the defendants.  (See Pls.' 4/12 Ltr. at 1; Set. Agr. at 3.3(B)).

---

[8]Citations to "Proposed Notice" refer to the Proposed Notice of Class Action Settlement, attached as Exhibit 2 to the Declaration of Lloyd Ambinder in Support of Plaintiffs' Motion for Preliminary Approval of the Proposed Settlement ("Prelim. Approval Decl.") submitted on July 31, 2015.

[9]Citations to "Pls.' 4/12 Ltr." refer to plaintiffs' letter, dated April 12, 2016.

The parties now seek final approval of the proposed settlement as memorialized in the Settlement Agreement.  The settlement is intended to encompass the claims of both Rule 23 Sub-classes.  (See Set. Agr. at 3.3(E)).

## DISCUSSION

### I. **Final Approval of Class Settlement**

#### A.  Approval of the Rule 23 Class Settlement - Legal Standard

Rule 23(e) of the Federal Rules of Civil Procedure states, in relevant part, that "the claims [or] issues . . . of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e).  To grant such approval under Rule 23(e), the Court must determine that the proposed settlement is "fair, adequate, and reasonable, and not the product of collusion." Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000); see Fed. R. Civ. P. 23(e).  Judicial policy favors the settlement and compromise of class actions.  Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116-17 (2d Cir. 2005); see also In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004).  Whether a settlement is fair is a determination that falls within the sound discretion of the court.  In re Ivan F. Boesky Sec. Litig., 948 F.2d 1358, 1368 (2d Cir. 1991); Newman v. Stein, 464 F.2d 689, 692 (2d Cir. 1972).

Generally, approval of a class action settlement involves a two-step process:  first, the court preliminarily approves the proposed settlement by evaluating the written submissions and informal presentation of the settling parties and the negotiating process leading to the settlement, Wal-Mart Stores. Inc. v. Visa U.S.A. Inc., 396 F.3d at 116; and, second, the court holds a

7

fairness hearing to "determine whether the settlement's terms are fair, adequate, and reasonable." Capsolas v. Pasta Rest. Inc., No. 10 CV 5595, 2012 WL 4760910, at *4 (E.D.N.Y. Oct. 5, 2012).

The Second Circuit has enumerated nine factors to guide courts in evaluating the substantive fairness of a proposed settlement:

> (1) [T]he complexity, expense[,] and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]

City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted), abrogated on other grounds by Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000); see also D'Amato v. Deutsche Bank, 236 F.3d 78, 86 (2d Cir. 2001); Becher v. Long Island Lighting Co., 64 F. Supp. 2d 174, 178 (E.D.N.Y. 1999).

The court must also determine if the settlement was "achieved through arm[']s-length negotiations by counsel with the experience and ability to effectively represent the class's interests." Becher v. Long Island Lighting Co., 64 F. Supp. 2d at 178 (citing Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982)); see also D'Amato v. Deutsche Bank, 236 F.3d at 85 (noting that the district court must "determine[] a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms"). In reviewing a proposed settlement, the court has the "'fiduciary responsibility of ensuring that

the settlement is . . . not a product of collusion, and that the class members' interests [were] represented adequately.'" Clement v. American Honda Fin. Corp., 176 F.R.D. 15, 29 (D. Conn. 1997) (internal citation omitted) (quoting In re Warner Commc'ns Secs. Litig., 798 F.2d 35, 37 (2d Cir. 1986)).

### 1.  Approval of the Rule 23 Class Settlement - Analysis of Procedural Fairness

The parties represent that the proposed settlement was entered into after extensive, "vigorous" arm's length negotiations between counsel. (Pls.' Mem. at 13).  Following the exchange of discovery, Class Counsel conducted a thorough investigation of the claims and expenses, conducted significant discovery, including the exchange of tens of thousands of documents and the depositions of the named plaintiffs and defendants' representatives.  (Id.) According to the parties, the settlement negotiations spanned a six month period between counsel experienced in wage and hour law.  (Id. at 3).  Given the presumption of fairness when a class settlement has been reached after "arm's-length negotiations between experienced, capable counsel after meaningful discovery," Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d at 116, the Court finds that there was procedural fairness in reaching the proposed settlement.

2. <u>Approval of the Rule 23 Class Settlement - Analysis of Substantive Fairness</u>

(a) <u>Complexity, Expense, and Likely Duration of the Litigation</u>

Turning to the <u>Grinnell</u> factors, while the expense and likely duration of this litigation is difficult to assess, the Court notes that defendants deny liability. (Defs.' Ans.[10] ¶ 1). <u>See also</u> <u>City of Detroit v. Grinnell Corp.</u>, 495 F.2d at 463. Indeed, defendants not only denied liability in their Answer but they claimed that a large number of employees at the 2 Broadway location may not have valid claims due to a provision in their contract that imposed a cap of PW&B rates at amounts set by the DOL in 2000.

This suggests that trial in this case would be contested and potentially long and complicated. Moreover, courts have noted that class actions are inherently complex. <u>See Velez v. Novartis Pharms. Corp.</u>, No. 04 CV 9194, 2010 WL 4877852, at *12 (S.D.N.Y. Nov. 30, 2010); <u>see also</u> <u>In re Austrian & German Bank Holocaust Litig.</u>, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), <u>aff'd</u>, 236 F.3d 78 (2d Cir. 2001). In the absence of a settlement, this case would likely require a substantial expenditure of money and time by both parties in pursuing this litigation, including monies spent on future motion practice. Among other motions anticipated by the parties are motions for class certification which defendants would likely oppose, dispositive cross-motions for summary judgment, and opposition papers to such motions. (Pls.' Mem. at 14). Even assuming plaintiffs were successful in defeating any pre-trial motions filed by defendants, there would be a lengthy, complex, and time consuming trial. Moreover, even if plaintiffs were able to establish defendants' liability at trial, there is always the potential for an

---

[10] Citations to "Defs.' Ans." refer to defendants' Answer to plaintiffs' Amended Complaint, filed with the Court on May 13, 2013.

appeal, which would inevitably produce delay.  Thus, this factor of potential protracted litigation favors settlement.

### (b) Reaction of Class to Settlement

The reaction of the Class to the settlement is the most significant factor in considering the fairness of the Settlement Agreement.  Chavarria v. New York Airport Serv., LLC, 875 F. Supp. 2d 164, 173 (E.D.N.Y. 2012) (citation omitted) (finding a positive class reaction when 91 claimants out of a possible 221 opted in to the suit and no possible claimants objected).  At the fairness hearing held on December 17, 2015, no class members objected to the settlement and plaintiffs' counsel represented that the reaction of the Rule 23 Class has been positive.  Further, notice was sent to 210 class members with information regarding the allocation formula and the process by which they could accept, opt-out, or object to the settlement.  (Proposed Notice, at 3-4).  Class members had until December 4, 2015 to submit objections or to opt-out of the settlement.  (Id. at 4).  Of the 210 claims forms sent, 132 returned their forms and no potential claimants affirmatively opted out; no objections were submitted.  (Settlement Decl. ¶ 6).  As of December 14, 2015, 132 of the 210 potential Rule 23 claimants had returned claim and release forms requesting settlement funds, which is approximately 62.8% of eligible claimants.  (Id. ¶ 6(c)).  As Class Counsel notes, this "shows strong support for the settlement and supports that the Notice adequately informed class members of their rights."  (Pls.' Mem. at 15).  "[T]he fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness," Prasker v. Asia Five Eight LLC, No. 08 CV 5811, 2010 WL 476009, at *4 (S.D.N.Y.

Jan. 6, 2010) (quoting Wright v. Stern, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008))

(approving settlement where there were no objections and only two opt-outs), and therefore, the

favorable response of the Rule 23 Class to the terms of the settlement weighs in favor of

approving the Settlement Agreement.


(c) Stage of Proceedings and Amount of Discovery Completed

At this point, the parties have conducted significant discovery including reviewing tens

of thousands of pages of documents, taking several depositions, and interviewing numerous

class members. This discovery has permitted the parties to assess the fairness and

reasonableness of the proposed settlement in light of the relevant provisions of the NYLL. (Pls.'

Mem. at 15-16; Settlement Decl. ¶ 5). Furthermore, the parties exchanged additional

information during the course of settlement negotiations. This enabled the parties to evaluate

adequately the potential Rule 23 Class. (Id.) When discovery has been extensive, and when

counsel has sufficient information to appreciate the merits of the case, then settlement is

favored. In re Warfarin Sodium Antitrust Litig., 391 F.3d at 537; Velez v. Novartis Pharm.

Corp., 2010 WL 4877852, at *13. Given the extent of discovery conducted in this case, the

Court finds that this factor favors approval of the proposed settlement.

(d) Establishing Liability and Damages and
Maintaining the Action Through Trial

The risk of establishing liability also favors settling this dispute.  Defendants would be

likely to oppose class certification, and they have raised several affirmative defenses through

which they may avoid or substantially limit liability and the class members' ultimate recovery.

(Defs.' Ans. ¶¶ 12-15).  Furthermore, plaintiffs' counsel acknowledges that they would need to

engage in additional factual inquiry and discovery and engage in extensive motion practice if the

case was to proceed to trial.  (Id.)  See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d at

119 (finding the settlement agreement reasonable since "plaintiffs would have faced significant

challenges in proving damages").

Finally, considering the risks of appeal and the prolonged nature of the litigation, the

Court finds that this factor favors approval of the proposed settlement.


(e) Ability of Defendants to Withstand Greater Judgment

While it is likely that defendants could withstand a greater judgment than the total

amount for which the case is settling (see Pls.' Mem. at 17), this is not a significant factor in this

case because the remainder of the Grinnell factors favor approval of the settlement.  See City of

Detroit v. Grinnell Corp., 495 F.2d at 463.  See also D'Amato v. Deutsche Bank, 236 F.3d at 86

(noting that when all other Grinell factors favor settlement, the fact that defendant could

withstand a higher judgment does not, by itself, render a settlement unfair); Frank v. Eastman

Kodak Co., 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (holding that this factor "standing alone,

does not suggest that the settlement is unfair").

(f) Range of Reasonableness of Settlement Fund

Class Counsel states that the settlement "provides much more than 'a fraction of the potential recovery.'" (Pls.' Mem. at 18).  Nonetheless, there is no way to determine with certainty what amount of damages would be awarded in the event of a successful prosecution of the litigation.  See In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig., 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989) (holding that "[d]ollar amounts are judged . . . in light of the strengths and weaknesses of plaintiffs' case"); Republic Nat'l Life Ins. Co. v. Beasley, 73 F.R.D. 658, 668 (S.D.N.Y. 1977) (citing Milstein v. Werner, 57 F.R.D. 515, 524 (S.D.N.Y. 1972)); Stull v. Baker, 410 F. Supp. 1326, 1332 (S.D.N.Y. 1976) (stating that the "[c]ourt is not to compare its terms with a hypothetical or speculative measure of a recovery that might be achieved by prosecution of the litigation to a successful conclusion").

Where the settlement provides "a meaningful benefit" to the class, settlements have been found reasonable.  In re Metlife Demutualization Litig., 689 F. Supp. 2d 297, 340 (E.D.N.Y. 2010).  "It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."  Johnson v. Brennan, No. 10 CV 4712, 2011 WL 4357376, at *11 (S.D.N.Y. Sept. 16, 2011) (quoting Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 628 (9th Cir. 1982)).

Pursuant to the Settlement Agreement, qualified members of the Rule 23 Class will each receive their proportionate share of what remains in the Settlement Fund after deducting from the $850,000 total award the attorneys' fees and costs and the award enhancements to the named plaintiffs.  (See Set. Agr., 3.3(E); see also Pls.' Mem. at 4).  That remainder will be divided

14

among the total number of class members according to a formula depending on which Sub-Class

a Class Member falls into.  (Pls.' Mem. at 4-5).  Courts have found settlement funds

representing far less of the maximum possible recovery reasonable.  See In re Giant Interactive

Grp., Inc., 279 F.R.D. 151, 162 (S.D.N.Y. 2011) (finding settlement fund reasonable when it

amounted to 16.5% of maximum possible recovery); Wright v. Stern, 553 F. Supp. 2d 337, 347

(S.D.N.Y. 2008) (finding a settlement fund that amounted to 40% of the maximum possible

recovery); Cagan v. Anchor Savings Bank FSB, No. 88 CV 3024, 1990 WL 73423, at *12

(E.D.N.Y. May 22, 1990) (finding a $2.3 million settlement fund reasonable when the

maximum possible recovery was $121 million).

Where, as here, the proposed settlement provides a meaningful benefit to the class

members when considered against the obstacle of proving the Rule 23 class members' claims

with respect to damages in particular, the Settlement Agreement is reasonable.  See In re Metlife

Demutualization Litig., 689 F. Supp. 2d at 340.


(g)  Conclusion

On the basis of the foregoing discussion of the Grinnell factors, the Court finds the terms

of the proposed settlement for the Rule 23 Class to be fair and reasonable under the

circumstances present in this case.  See City of Detroit v. Grinnell Corp., 495 F.2d at 463.

Accordingly, the Court approves the settlement for the Rule 23 Class.

B. Approval of Class Representatives' Enhancement Awards

Pursuant to the Settlement, the Class Representatives, Mr. Malcolm, Ms. Chaneyfield, Mr. Velez and Mr. Comer will each receive a $5,000 enhancement award for their services to the litigation. (Set. Agr. at 3.3(D)). "The amount of the incentive award is related to the personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit." Dupler v. Costco Wholesale Corp., 705 F. Supp. 2d 231, 245 (E.D.N.Y. 2010) (quoting Parker v. Time Warner Entm't Co., 631 F. Supp. 2d 242, 279 (E.D.N.Y. 2009)) (internal quotation marks omitted). According to plaintiffs' counsel, the four named plaintiffs made "significant contributions to the prosecution and resolution" of the case. (Pls.' Atty. Fee Mem.[11] at 14). They also took significant risk in pursuing the case; all but Malcolm still work for defendants. (Id. at 14-15). As "trouble makers," who sue their employer, they face potential retaliation. (Id. at 15 (citing Frank v. Eastman Kodak Co., 228 F.R.D. at 187-88)). Although plaintiffs concede that there has been no threat or indication of retaliation, courts have held that class representatives "merit recognition for assuming the risk of such for the sake of absent class members." Guippone v. BHS&B Holdings, Llc, No. 09 CV 1029, 2011 WL 5148650, at *20 (S.D.N.Y. Oct. 28, 2011); Parker v. Jekyll & Hyde Entm't Holdings, LLC, No 08 CV 7670, 2010 U.S. Dist. LEXIS 12762, at *4 (S.D.N.Y. Feb. 9, 2010) (holding that service awards "provide an incentive to seek enforcement of the law despite the dangers").

According to Class Counsel, the named plaintiffs contributed significant time and effort

---

[11] Citations to "Pls.' Atty. Fee Mem." refer to plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Approval of Attorneys' Fees and Costs and for Approval of Service Awards, filed on December 14, 2015.

to the case.  They provided detailed factual information regarding their jobs and the defendants' pay policies.  They assisted in responding to discovery requests, preparation for and attendance at depositions, and made themselves available for consultation throughout the case and during settlement negotiations.  (Pls.' Atty. Fee Mem. at 15).  They also were prepared for and sat for lengthy depositions.  See Parker v. Jekyll & Hyde Entm't Holdings, LLC, 2010 U.S. Dist. LEXIS 12762 at *4; Frank v. Eastman Kodak Co., 228 F.R.D. at 187.

In the Memorandum submitted by Class Counsel, counsel argues that the named plaintiffs should each receive $5,000, which amounts to 2.3% of the total recovery.  (Pls.' Atty. Fee Mem. at 16).   Having considered the involvement of the four named plaintiffs with the discovery and settlement phases of this litigation, the Court finds that an enhancement award of $5,000 each is reasonable in light of the overall settlement.  See Morris v. Affinity Health Plan, Inc., 859 F. Supp. 2d 611, 624 (S.D.N.Y. 2012) (approving an enhancement award of $7,500 in a $3 million settlement); Demunecas v. Bold Food, LLC, No. 09 CV 440, 2010 WL 3322580, at *10 (S.D.N.Y. Aug. 23, 2010) (approving $5,000 for class representatives in an $800,000 settlement); Reyes v. Buddha-Bar NYC, No. 08 CV 2494, 2009 WL 5841177, at *5 (S.D.N.Y. May 28, 2009) (approving a $7,500 enhancement award for class representative in a $710,000 settlement); Dornberger v. Metropolitan Life Ins. Co., 203 F.R.D. 118, 124 (S.D.N.Y. 2001) (approving an enhancement award of $10,000 in a $12 million settlement when the class representative was deposed and was involved in settlement proceedings).

Accordingly, since the Court finds the enhancement awards to be fair and reasonable, the Court approves the enhancement awards to the named plaintiffs.

C. Approval of Attorneys' Fees and Costs

Class Counsel is requesting an award of $294,540.73 in fees, plus $10,459.27 in costs, professional fees, and expenses. This amount of fees represents 23.8% of the total amount of the Settlement Fund for attorneys' fees. (Atty. Fee Decl. ¶ 8). Defendants do not object to Class Counsel's application for attorneys' fees and costs, nor did any member of the Rule 23 Class file an objection. (Pls.' Atty. Fee. Mem. at 2).

Courts in this Circuit have often approved requests for attorneys' fees amounting to 33.3% of a settlement fund. See Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2008) (approving attorneys' fees of 33.3% of a $1.5 million settlement fund); In re Blech Secs. Litig., No. 94 CV 7696, 2002 WL 31720381, at *1 (S.D.N.Y. Dec. 4, 2002) (awarding attorneys' fees of 33.3% of settlement fund); see also Adair v. Bristol Tech. Sys., Inc., No. 97 CV 5874, 1999 WL 1037878, at *4 (S.D.N.Y. Nov. 16, 1999); Klein v. PDG Remediation, Inc., No. 95 CV 4954, 1999 WL 38179, at *4 (S.D.N.Y. Jan. 28, 1999).

Moreover, in this case, Class Counsel expended significant time and effort in connection with the litigation, resulting in a lodestar fee of $315,342.50, representing 825.10 hours of attorney time and time spent by paralegals and other staff members. (Pls.' Mem. at 6). Thus, the 23.8% fees requested by Class Counsel represent less than Class Counsel's total lodestar calculation. (Id.) Moreover, as Counsel notes, this fee award also compensates counsel for time spent administering the Settlement Fund in the future, including answering class members' questions, questions from the Claims Administrator, and other tasks. (See id.) See also Beckman v. KeyBank, N.A., 293 F.R.D. 467, 482 (S.D.N.Y. 2013); McMahon v. Olivier Cheng

18

Catering & Events, LLC, No. 08 CV 8713, 2010 U.S. Dist. LEXIS 18913, at *21 (S.D.N.Y. Mar. 3, 2010). As such, the Court finds the fees requested by Class Counsel to be reasonable. See In re Vitamin C Antitrust Litig., No. 06 MD 1738, 2012 WL 5289514, at *10 (E.D.N.Y. Oct. 23, 2012) (awarding as attorneys' fees a percentage of the settlement fund resulting in an award that was a fraction of the lodestar calculation); Castagna v. Madison Square Garden, L.P., No. 09 CV 10211, 2011 WL 2208614, at *10 (S.D.N.Y. June 7, 2011) (awarding attorneys' fees to be paid out of the settlement fund resulting in a positive lodestar multiplier of 1.07); In re IPO Secs. Litig., 671 F. Supp. 2d 467, 514, 516 (S.D.N.Y. 2009) (awarding attorneys' fees of 33.3% of a $586 million settlement fund resulting in a negative lodestar multiplier of 0.7); In re Lloyd's Am. Fund Litig., No. 96 CV 1262, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (awarding attorneys' fees to be paid out of a settlement fund resulting in a positive lodestar multiplier of 2.09).

Class Counsel is also seeking litigation costs and expenses in the amount of $10,459.27 in addition to the request for attorneys' fees. (Pls.' Mem. at 13). "It is well established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses." In re Marsh ERISA Litig, 265 F.R.D. 128, 150 (S.D.N.Y. 2010) (approving costs and expenses of $1,270,915.40); see also In re Vitamin C Antitrust Litig., 2012 WL 5289514, at *9 (approving attorneys' expenses of $2.5 million to be paid out of a settlement fund of $9.5 million); In re Veeco Instruments, Inc., No. 05 MDL 01695, 2007 WL 4115808, at *11 (S.D.N.Y. Nov. 7, 2007) (awarding over $700,000 in costs and expenses). The costs and expenses requested by Class Counsel represent court and process server fees, postage and

courier fees, deposition costs, transportation, photocopying expenses, and legal research.  (Id. at

13-14; Ex. A).  Neither the defendants, nor any Class member, has objected to these costs.

For these reasons, the Court finds these costs to be necessary and incidental to Class

Counsel's representation of the Class and, therefore, finds such costs to be reasonable.


D.  Adequacy of Notice

Pursuant to the preliminary Order dated September 3, 2015, notice was disseminated to

all potential class members on October 5, 2015.  (Settlement Decl. ¶ 6).  The Notice of Class

Action Settlement ("the Notice") provided the following information:  (1) an explanation of who

may recover under the settlement; (2) brief contextual background to this lawsuit; (3) a summary

of legal rights and options; (4) an explanation of the purpose of the Notice; (5) an explanation of

who falls into the Rule 23 Class; (6) identifying information for Class Counsel; (7) an

explanation of the benefits and terms of the Settlement Agreement; (8) an overview of the

attorneys' fees, expenses, and the award that will be paid to the Class Representatives; (9) the

result if the Court approves or does not approve the Settlement Agreement; (10) an explanation

of the Fairness Hearing; (11) an overview of an individual's options regarding the Settlement

Agreement; and (12) additional contact information should a recipient of the notice have any

questions.  (Id., Ex. B).

As the Court noted in its preliminary Order, the Court found that the Notice and means

of notification were sufficient.  (Order[12] at 1-2).  See also Weinberger v. Kenrick, 698 F.2d 61,

_____

[12]Citations to "Order" refer to this Court's Order, dated September 3, 2015.

20

72 (2d Cir. 1982) (stating that mailing individual notices to class members at their last known

addresses was a sufficient means of notification under the circumstances).  The Court also

approved the other materials submitted by Class Counsel.  (Order at 2).  They include: class

forms, a formula for settlement, and releases.  (See Settlement Decl., Ex. B).  Given the detailed

nature of these documents, along with the fact that defendants did not mount any opposition to

them, the Court approved the class forms, the formula for settlement, and the releases submitted

by plaintiffs.


## II.  <u>Final Approval of the Rule 23 Class</u>

The parties also request that the Court grant final approval of the Rule 23 Class.

(Settlement Decl. ¶ 3).  Rule 23(a) of the Federal Rules of Civil Procedure governs class

certification, providing:

> One or more members of a class may sue or be sued as
> representative parties on behalf of all members only if:  (1) the
> class is so numerous that joinder of all members is
> impracticable; (2) there are questions of law or fact common to
> the class; (3) the claims or defenses of the representative parties
> are typical of the claims or defenses of the class; and (4) the
> representative parties will fairly and adequately protect the
> interests of the class.

Fed. R. Civ. P. 23(a).

In addition to satisfying these prerequisites, a plaintiff also must satisfy one of the three

subdivisions of Rule 23(b):  (1) that separate actions pose a risk of inconsistent adjudications or

would substantially impair the ability of other individuals to protect their interests; (2) injunctive

or declaratory relief is sought concerning the class as a whole; or (3) common questions of law

or fact predominate over individual questions and a class action is superior to other methods for

bringing suit. Fed. R Civ. P. 23(b). See generally, Amchem Prods., Inc. v. Windsor, 521 U.S.

591 (1997). It is a plaintiff's burden to establish compliance with the requirements of Rule 23,

but in analyzing the issue of certification, the Court accepts as true the allegations in the

Complaint regarding the merits of plaintiff's claim. See Labbate-D'Alauro v. GC Servs. Ltd.

P'ship, 168 F.R.D. 451, 454 (E.D.N.Y. 1996) (citation omitted).


A. Rule 23(a) Requirements

1. Numerosity

In this case, there appears to be no dispute that the numerosity requirement of Rule 23(a)

has been satisfied. Here, there are allegedly 210 potential Rule 23 class members (see Pls.'

Mem. at 5); thus, factors such as the inconvenience of trying individual actions, as well as the

financial resources of potential class members, weigh in favor of a class action in this case. See

Savino v. Computer Credit, Inc., 173 F.R.D. 346, 351 (E.D.N.Y. 1997) (holding that

"[i]mpracticability exists where individual adjudication would take an extended period of time

and joinder of all the claims would be expensive, time consuming[,] and drastically increase the

legal expenses for all the parties") (citing In re Drexel Burnham Lambert Grp., Inc., 960 F.2d

285, 289 (2d Cir. 1992))), aff'd, 164 F.3d 81 (2d Cir. 1998); see also Robidoux v. Celani, 987

F.2d 931, 936 (2d Cir. 1993) (noting that such factors for determining the impracticality of

joinder include the financial resources and ability of claimants to institute individual suits and

the "judicial economy" that arises when multiple suits are avoided). Moreover, the Second

22

Circuit has noted that "numerosity is presumed at a level of 40 members." Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995), cert. denied, 115 U.S. 2277 (1995).

Accordingly, the Court finds that the requirement of numerosity has been satisfied.

### 2. Common Questions of Fact or Law

In determining whether the plaintiffs can show that the claims of the potential Rule 23 class members share common questions of law or fact, the Rule does not require that "'all questions of law or fact raised be common.'" Savino v. Computer Credit, Inc., 173 F.R.D. at 352 (quoting Halford v. Goodyear Tire & Rubber Co., 161 F.RD. 13, 18 (W.D.N.Y. 1995)). As long as "common questions . . . predominate," differences in the circumstances raised by individual members will not defeat commonality. In re Sadia, S.A. Sec. Litig., 269 F.R.D. 298, 304 (S.D.N.Y. 2010). In other words, "there need only be a single issue common to all members of the class," as the "critical inquiry is whether the common questions lay at the 'core' of the cause of action alleged." Savino v. Computer Credit, Inc., 173 F.R.D. at 352.

Here, the central legal question for the Rule 23 Class is whether Allied failed to pay its armed and unarmed security guards PW&B wages in accordance with NYLL. (See Pls.' Mem. at 6). As such, the Court finds that there are common issues sufficient to satisfy the requirements of Rule 23(a)(2).

### 3. Typicality

Rule 23(a)(3) requires that the class representatives' claims be typical of the claims of the class. Typicality has been found "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." Robidoux v. Celani, 987 F.2d at 936. Typicality is "usually met irrespective of varying fact patterns which underlie individual claims" so long as the claims of the class representative are typical of the class members' claims. Bourlas v. Davis Law Assocs., 237 F.R.D. 345, 351 (E.D.N.Y. 2006) (quoting Lattate-D'Alauro v. GC Servs. Ltd. P'ship, 168 F.R.D. at 456-57). Here, the claims of the four Class representatives satisfy the typicality requirement because they are or were employed as security guards for Allied, and they were allegedly not compensated for the hours that they worked at the required PW&B rates. (See Pls.' Mem. at 7-8). Irrespective of any differences in the amount of time they worked or the amount of monies owed to the Class representatives in comparison to the other class members, the Class representatives' claims stem from defendants' alleged uniformly wrongful conduct and, therefore, are sufficiently typical to warrant certification.

### 4. Adequacy of Representation

In order to satisfy Rule 23(a)(4), which requires the interests of the class to be adequately represented, the Second Circuit has established a two-prong test. In re Drexel Burnham Lambert Grp., 960 F.2d at 291. First, there must be a showing that Class Counsel is "'qualified, experienced and generally able to conduct the litigation.'" Halford v. Goodyear Tire

& Rubber Co., 161 F.R.D. at 19 (quoting Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562 (2d

Cir. 1968)).  Second, the class members' interests may not be "'antagonistic'" to one another.

County of Suffolk v. Long Island Lighting Co., 710 F. Supp. 1407, 1413 (E.D.N.Y. 1989)

(quoting Eisen v. Carlisle & Jacquelin, 391 F.2d at 562), aff'd, 907 F.2d 1295 (2d Cir. 1990).

Here, Class Counsel claims to have extensive experience in prosecuting wage and hour

class actions, and has been appointed as counsel in other cases.  (Pls.' Mem. at 9 (providing a

"sampling" of cases)).  Class Counsel also claims that they have demonstrated their ability to

prosecute this case diligently and to represent the interests of the potential Rule 23 Class over

the course of this litigation itself.  (See id.)

Class Counsel also represents that neither the named plaintiffs nor Class Counsel have

any conflict of interest with the members of the potential Rule 23 Class.  (Id. at 9-10).  In order

for a potential or actual conflict to defeat certification, it "must be fundamental."  In re Flag

Telecom Holdings, Ltd. Secs. Litig., 574 F.3d 29, 36 (2d Cir. 2009) (internal quotation marks

and citations omitted).  Based on the nature of the plaintiffs' claims and on the representation

that no conflict of interest exists, the Court finds that plaintiffs' claims are so interrelated with

those of the other potential Rule 23 class members that the named plaintiffs are adequate Class

Representatives.

B.  The Requirements of Rule 23(b)(3)

    1.  Common Questions Predominate Over Individual Issues

Under Rule 23(b)(3), a proposed class must be sufficiently cohesive and common issues must predominate in order to warrant adjudication as a class.  Amchem Prods. Inc. v. Windsor, 521 U.S. at 623.  Courts focus on whether common questions related to liability exist.  See Iglesias-Mendoza v. La Belle Farm. Inc., 239 F.R.D. 363, 372-73 (S.D.N.Y. 2007) (internal quotation marks and citations omitted).  Cases involving claims of unpaid wages have been found to be "about the most perfect question for class treatment."  Id. at 373.  Even if there are defenses that affect class members differently, that "does not compel a finding that individual issues predominate over the class issues."  In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 138 (2d Cir. 2001), overruled on other grounds by In re IPO Secs. Litig., 471 F.3d 24 (2d Cir. 2006).

In this case, plaintiffs allege that the proposed Rule 23 class members are entitled to the same legal remedies based on the defendants' failure to pay them in accordance with the law for all hours worked.  (See Pls.' Mem. at 10).  See, e.g., Bolanos v. Norwegian Cruise Lines Ltd., 212 F.R.D. 144, 157-58 (S.D.N.Y. 2002).  Thus, the Court finds that common questions predominate in this case.

2.  <u>Class Action as Superior Method of Resolution</u>

Additionally, to satisfy Rule 23(b)(3), a plaintiff must demonstrate that "a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." <u>Brown v. Kelly</u>, 609 F.3d 467, 483 (2d Cir. 2010) (internal quotation marks and citation omitted).  The Rule requires the Court to consider:

> (1) The class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action.

In this case, plaintiffs claim that they know of no other individual litigation and that there is no other reason to believe that this forum is not desirable.  (<u>See</u> Pls.' Mem. at 10-11). According to Class Counsel, a class action will preserve judicial resources by consolidating common issues of fact and law, and there is no indication that the potential Rule 23 class members desire to control their own cases.  (<u>See id.</u> at 11-12).  For all of these reasons, the Court approves the Rule 23 Class.


<u>CONCLUSION</u>

For the foregoing reasons the Court Orders that:  (1) the Settlement Agreement reached between the Allied defendants and plaintiffs is approved; (2) the Class Representatives' enhancement awards of $5,000 each is approved; (3) Class Counsel's request for attorneys' fees, costs, and expenses is approved; (4) final certification is granted to both Rule 23 Sub Classes;

and (5) the Clerk of the Court is directed to enter Final Judgment and an Order of Dismissal with Prejudice.  Further, pursuant to the Settlement Agreement, defendants are directed to tender the Settlement Fund to Dahl Administration within 46 days after the date of this Order, by May 30, 2016.  Thereafter, Dahl Administration will distribute the Settlement Fund to plaintiffs within 15 days of receipt from defendant.

 The Clerk is directed to mail copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
  April 14, 2016

       /s/ Cheryl L. Pollak
       _____
       Cheryl L. Pollak
       United States Magistrate Judge
       Eastern District of New York

28